UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DIANE E. C., | ) |
| | ) |
|         Plaintiff | ) |
| | ) |
| v. | )    No. 2:20-cv-00309-LEW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|         Defendant | ) |

**REPORT AND RECOMMENDED DECISION**[2]

This Social Security Disability (SSD) appeal raises the questions of whether the administrative law judge (ALJ) impermissibly construed raw medical evidence in assessing the plaintiff's mental residual functional capacity (RFC) and erred in discounting opinions of an evaluating neuropsychologist and a treating social worker.  *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 12) at 2-7.  I agree that the ALJ impermissibly construed raw medical evidence in evaluating the plaintiff's mental RFC and, on that basis, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.  I need not and do not reach the plaintiff's remaining points of error.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2021, Finding 1, Record at 17; that she had the severe impairments of obesity, affective disorder, anxiety disorder, autism spectrum disorder/highly sensitive person classification (ASD/HSP), attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD), Finding 3, *id.*; that she had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) in that she could lift and/or carry up to 25 pounds frequently and up to 50 pounds occasionally, stand and/or walk for eight hours, and sit for eight hours during an eight-hour work day, but could never climb ladders, ropes, or scaffolds, never be exposed to dangerous machinery or hazardous heights, occasionally be exposed to humidity and wetness, but never in excessive amounts, could occasionally interact with her co-workers and the public but could not perform tandem work, could not perform work at a production rate pace, such as on an assembly line, and could tolerate occasional changes in the routine work setting, Finding 5, *id.* at 21; that she was capable of performing past relevant work as an inventory specialist/sales attendant as actually performed, Finding 6, *id.* at 28; that, in the alternative, considering her age (35 years old, defined as a younger individual, on her alleged disability onset date, February 14, 2018), education (at least high school), work experience (transferability of skills immaterial), and RFC, she was capable of performing other jobs existing in significant numbers in the national economy, *id.* at 28-29; and that she, therefore, had not been disabled from February 14, 2018, her alleged onset date of disability, through the date of the decision, November 4, 2019, Finding 7, *id.* at 30. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final

determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404 .1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

Alternatively, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir.1986).

## I. Discussion

The plaintiff's mental impairments were evaluated by four experts: agency nonexamining consultants Leigh Haskell, Ph.D., on initial review on July 13, 2018, and Brian Stahl, Ph.D., on reconsideration on October 24, 2018, Laura Slap-Shelton, Psy.D., in a report of a neuropsychological evaluation completed on November 19, 2018, and treating social worker Barbara Rachel, LCSW, in a medical assessment of ability to do mental work-related activities dated May 30, 2019. *See* Record at 76-81, 83-88, 1618-31, 1799.

Drs. Haskell and Leigh found that the plaintiff had severe medically determinable mental impairments of depressive disorder and anxiety and deemed her capable of "understand[ing] and remember[ing] at least simple work tasks and procedures[,]" "carry[ing] out at least simple work tasks during a normal work schedule[,]" "interact[ing] with supervisors and a small group of coworkers but not with the public[,]" and "adapt[ing] to simple changes in a work setting." *Id*. at 78, 80-81, 85, 87-88.

After administering a WAIS-IV intelligence test and several neuropsychological and personality/behavior tests, Dr. Slap-Shelton diagnosed the plaintiff with autism, PTSD, generalized anxiety disorder, major depressive disorder, ADHD, and a nonverbal learning disorder pattern. *See id*. at 1618-19, 1630-31. She concluded:

> Given [the plaintiff's] developmental disorder of Autism Spectrum Disorder and her severe and chronic PTSD, along with her generalized anxiety, depression and ADHD, it is unlikely that she will be able to maintain employment. Her previous history already includes that she was told by a boss that no one liked her. [Her] misperceptions of social interactions coupled with her severe anxiety and sensitivity to perceptions of rejection make it very likely that she will struggle with co-worker and customer relationships. [Her] judgement is likely to become impaired depending on her level of stress, and she is easily stressed by minimal demands and perceptions based on previous trauma and impaired social perceptual skills. Her ADHD and organizational challenges will make it very difficult to manage job demands.

4

*Id*. at 1629.

LCSW Rachel checked boxes indicating that, in a normal work setting on a sustained 40-hour-per-week basis, the plaintiff was able to understand, remember, and carry out simple instructions but unable to respond appropriately to supervision, co-workers, and usual work situations or deal with changes in a routine work setting and would be off-task at least 15 percent of the time, and miss work or leave early at least two times per month, due to mental and/or physical impairments. *See id*. at 1799.

The ALJ found that the plaintiff had severe mental impairments of affective disorder, anxiety disorder, autism spectrum/highly sensitive person classification, ADHD, and PTSD. *See* Finding 3, *id*. at 17. She deemed the opinions of Drs. Haskell and Stahl "persuasive only in part[,]" was "not persuaded by much, if any," of the Rachel opinion, and was "not very persuaded by some of the opinions [of Dr. Slap-Shelton] overall." *Id*. at 26-27. With respect to the Slap-Shelton report, she elaborated:

> The assessment that the [plaintiff] may struggle with co-worker and customer service relationships, and could have impaired judgment when stressed, is only somewhat persuasive as it is aligned with the [plaintiff]'s allegations and information related to her treating therapists. This has been accounted for in part with the limitations of no tandem work and occasional interaction with co-workers and the public. However, the undersigned notes that this opinion does not consider the [plaintiff]'s online activity, which was somewhat underreported to Dr. Slap-Shelton. In addition, the opinions regarding stress have been accounted for, in part, with the limitations of no production rate pace work and only occasional changes in the routine work setting. The undersigned finds the remainder of the opinion to be largely inconsistent with the objective treatment notes showing flat affect or depressed mood, but little other findings of note.

*Id*. (citation omitted).

The ALJ, hence, relied in part on a neuropsychological report unseen by Drs. Haskell and Stahl to assess medically determinable, severe mental impairments and work-related mental limitations. The plaintiff asserts that, in so doing, the ALJ interpreted raw medical evidence,

rendering her mental RFC determination unsupported by substantial evidence. *See* Statement of Errors at 5. I agree.

In general, unless a claimant's work-related limitations are obvious to a layperson as a matter of common sense, an ALJ is not qualified to determine a claimant's RFC on the basis of the raw medical evidence but must instead look to a medical expert to do so. *See, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record").

The commissioner contends that the ALJ did not interpret raw medical evidence but, rather, merely "consider[ed] the supportability and consistency of [Dr. Slap-Shelton's findings] under the regulations[,]" concluding that some of those findings were supported by the plaintiff's subjective statements, activities, and normal mental status examinations. Opposition at 16-17. However, those regulations pertain to "medical opinions[,]" 20 C.F.R. § 404.1520c, defined, as relevant here, as "statement[s] from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[,]" *id.* § 404.1513(a)(2)(ii).

Dr. Slap-Shelton made no statement about what the plaintiff could still do despite her mental impairments; rather, she discussed possible or likely difficulties stemming from the mental impairments assessed. *See* Record at 1629. To fill that gap, the ALJ expressly translated the findings she had deemed "somewhat persuasive" into work-related limitations, explaining that she

6

had "accounted in part" for Dr. Slap-Shelton's assessment that the plaintiff might "struggle with co-worker and customer service relationships[] and could have impaired judgment when stressed . . . with the limitations of no tandem work and occasional interaction with co-workers and the public[,]" and had also accounted in part for stress "with the limitations of no production rate pace work and only occasional changes in the routine work setting." *Id*. at 26-27.

In so doing, the ALJ "overstepped the bounds of her expertise as a layperson, translating nuanced raw medical evidence into a functional capacity assessment." *Staples v. Astrue* ("*Donald Staples I*"), No. 09-440-P-S, 2010 WL 2680527, at *4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010); *see also, e.g., Lisa M. C. v. Saul*, No. 2:20-cv-00080-NT, 2020 WL 6741784, at *5-6 (D. Me. Nov. 17, 2020) (rec. dec., *aff'd* Dec. 2, 2020) (ALJ construed raw medical evidence in translating psychologist's findings on evaluation that claimant "had weak verbal and visual memory" and "difficulty with multi-step planning" and recommendation that claimant "break down large tasks into smaller components" into limitation "to simple work that does not entail a production rate pace") (citation and internal quotation marks omitted).

The error is not harmless. Although the ALJ also partly credited the opinions of Drs. Haskell and Stahl, neither had the benefit of review of the Slap-Shelton report or assessed those specific limitations. Accordingly, those portions of the ALJ's mental RFC are unsupported by substantial evidence.[3] That, in turn, undermines her reliance on the testimony of a vocational

---

[3] The commissioner contends that any error by the ALJ in failing to limit the plaintiff to simple work with no public contact, as found by Drs. Haskell and Stahl, is vocationally irrelevant and therefore harmless because all of the jobs the ALJ found the plaintiff capable of performing are unskilled, and the jobs of laundry worker and hand packager entail no public contact. *See* Opposition at 14-15. She argues that the Haskell and Stahl opinions support the ALJ's limitations to only occasional co-worker contact, occasional changes in a routine work setting, and no production-rate or assembly line work. *See id*. at 13, 16. Even assuming that any error in failing to limit the plaintiff to simple work with no public contact is harmless, the Haskell and Stahl opinions do not support the findings that the plaintiff could have occasional interaction with co-workers but could not perform tandem work (*versus* interacting with "a small group of coworkers[,]" per Drs. Haskell and Stahl) and could not work at a production-rate pace, such as on an assembly line (no such limitation, per Drs. Haskell and Stahl), which the ALJ crafted to account for findings of Dr. (*continued on next page*)

7

expert at Steps 4 and 5 to find the plaintiff capable of performing past relevant work as an inventory specialist/sales attendant or, in the alternative, work existing in significant numbers in the national economy. *See* Finding 6, *id*. at 28; *id.* at 28-29; *see also, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case be **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

Slap-Shelton (unseen by Drs. Haskell and Stahl) that the plaintiff might struggle with co-worker and customer service relationships and could have impaired judgment when stressed. *Compare* Record at 26-27 *with id*. at 80, 88.